**Electronically Filed
Supreme Court
SCWC-14-0001143
09-AUG-2016
09:27 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

TAKSON KRSTOTH, Petitioner/Defendant-Appellant.
_____

SCWC-14-0001143

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001143; CR. NO. 11-1-1293)

AUGUST 9, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

Takson Krstoth ("Krstoth") entered a plea of guilty to one count of Murder in the Second Degree, in violation of Hawaiʻi Revised Statutes ("HRS") § 707-701.5 (2014).[1]  Before sentencing,

---

[1]     As it stated at the time of the offense, HRS § 707-701.5 provides in relevant part that "a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

Krstoth requested that the court allow him to withdraw his plea and go to trial, then filed a motion requesting the same, asserting that his plea was not entered knowingly, intelligently, or voluntarily, and that he felt pressured by his public defender and interpreter to plead guilty.  The circuit court denied the motion and sentenced him to life imprisonment with the possibility of parole.

Krstoth raises the following question on certiorari: "Whether the ICA gravely erred in holding that the Circuit Court did not abuse its discretion in denying Krstoth's Motion to Withdraw Plea?"

"[A] more liberal approach is to be taken" when a defendant moves to withdraw his or her plea prior to sentencing such that "the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice."  State v. Jim, 58 Haw. 574, 576, 574 P.2d 521, 523 (1978).  Moreover, "[a] 'language barrier' between the defendant and the court is a 'salient fact' that puts the trial court on notice that a defendant's waiver may be 'less than knowing and intelligent.'"  State v. Phua, 135 Hawaiʻi 504, 513, 353 P.3d 1046, 1055 (2015) (quoting State v. Gomez-Lobato, 130 Hawaiʻi 465, 471, 312 P.3d 897, 903 (2013)).

In this case, the circuit court's colloquy does not establish that Krstoth voluntarily, intelligently, and knowingly entered his plea with an understanding of the nature of the charge against him and the consequences of his plea. We therefore vacate the Judgment of Conviction and Sentence, and remand the case to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Circuit Court Proceedings

On September 15, 2011, Krstoth was charged by grand jury indictment with one count of Murder in the Second Degree. Deputy Public Defender Edward Harada ("Harada") was appointed to represent Krstoth.

On April 16, 2013, Krstoth, present with Harada and court-appointed Chuukese interpreter Kachusy Silander ("Silander"), entered a plea of guilty to the charged offense pursuant to a plea agreement with the State. At the outset, the colloquy revealed that Krstoth was twenty-two years old, had a tenth grade education, and did not read or write any English. After the circuit court accepted Krstoth's guilty plea, sentencing was scheduled for July 23, 2013.

On June 25, 2013, however, the circuit court received a handwritten, ex parte letter from Krstoth, written by someone for him, which stated:

> To the Honorable Judge Mr. Lee.  Hi my name is ____, and I'm writing in regards to a plea bargain that I agree upon due to being basically scared to death by my attorney Mr. Edward Harada, stating to me that if I did in fact even think of taking my case to trial and lost, that I would spend the rest of my life behind prison bars or close to it.  Laying in my bed at night and thinking of my children and their future truly rips my heart to pieces, that I cant [sic] be thier [sic] to guide, love, support, and share their joy as a father.  I'm aware that I've signed a Rule (11) . . . Would you please give me the oppertunity [sic] to recant my guilty plea so, I can have a fair day in trial?  On July 23, 2013 I will be in your courtroom for my sentencing day.  Your Honor please consider my request.  Thank you and God bless.
>
>                              Sincerely
>                              Mr. T. Krstoth

The circuit court forwarded the letter to Harada.

On September 3, 2013, Harada filed a "Motion to Withdraw as Counsel and Have Substitute Counsel Appointed" ("motion to withdraw as counsel").  The attached declaration of counsel by Harada stated, in relevant part, as follows:

> 7.  On August 27, 2013, I visited Takson Krstoth at OCCC and had [an interpreter] present to provide information.
>
> 8.  I discussed the letter with Mr. Krstoth, and he made it clear that the words expressed in the letter are his true words and feelings, but that someone else assisted him in writing the words out on paper.  Mr. Krstoth affirmed the words and feelings he expressed in his letter and made several things clear:  (a) that he felt pressured by me to accept the plea bargain offered by the State and plead "guilty" to the charged offense; (b) that he did not understand all of his rights he had, including the right to a trial, because I did not make things clear to him; and (c) that he does in fact want to withdraw his previously entered "guilty" plea and have a trial to contest the charge against him."

On September 9, 2013, the circuit court granted the motion to withdraw as counsel and substitute counsel was appointed to represent Krstoth.

4

On April 14, 2014, through his new attorney, Krstoth filed a "Motion to Withdraw Plea" ("motion to withdraw plea"), asserting that he was unaware during the change of plea hearing that he was changing his plea to guilty, the interpreter was not interpreting what was being said and was merely telling him to "say yes" or "say no," he was not informed of the details of the plea agreement, and he did not authorize his initial counsel Harada to agree to the plea agreement. On June 10, 2014, the State filed its memorandum in opposition to Krstoth's motion. The State argued that there was nothing in the record to indicate that Krstoth did not understand the colloquy with the court or that he was unable to make an intelligent decision at his change of plea hearing.

At a hearing on the motion to withdraw plea, the circuit court heard testimony from Krstoth, Silander, and Harada. On June 17, 2014, the circuit court issued its "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Withdraw Plea."[2] The circuit court concluded, in relevant part, as follows:

---

[2] The circuit court actually made few relevant findings, as most of the "findings" were recitations of testimony, such as finding of fact number 37, which states, "Mr. Silander testified that the Defendant understood his translations and that he specifically went over the change of plea for line by line with the Defendant." This recitation of testimony is not a finding by the circuit court that Krstoth understood the interpreter's sight translations. Dep't Envtl. Serv. v. Land Use Comm'n, 127 Hawaiʻi 5, 15, n.12, 275 P.3d 809, 819, n.12 (2012) (explaining that a recitation of testimony is not a finding of fact).

15. The Court finds that the Defendant presented contradictory testimony evidence and failed to present any credible evidence establishing plausible and legitimate grounds for the withdrawal of his guilty pleas.

16. Here, although the Defendant claims that his plea was not entered knowingly or intelligently since the interpreter was merely telling the Defendant to "say yes" or "say no" and that his attorney and the interpreter had pressured him to plead guilty, the Court finds and concludes that, based on its examination and consideration of the entire record in this case, the Defendant knowingly, intelligently, and voluntarily entered his guilty plea.

17. At the hearing on the Motion, the Defendant testified to the following: that Mr. Harada and Mr. Silander discussed the guilty plea form and plea agreement with him, he knew that he had a choice to plead guilty, and that no one was pressuring him to change his plea. The Defendant's testimony contradicted the claims raised in his Motion.

18. The transcript of the proceedings shows no reluctance or hesitancy by the Defendant to enter his plea. The Defendant answered each question appropriately, never refused to answer any of the questions, never requested to stop the proceedings, and never indicated that he did not understand the proceedings.

19. More importantly, during the Court's questioning of the Defendant, the Defendant was asked numerous times whether he understood what was being told to him and if he had any questions.

20. The Court finds and concludes that the Defendant did understand what was being asked on [sic] him since he did ask the Court a question about the presentence report.

21. The Court further finds and concludes that the Defendant was aware of his rights, the nature of the charges against him and the consequences of his pleas [sic].

22. Moreover, the evidence presented at the hearing established that on April 9, 2013, Mr. Harada, through Mr. Silander, went over the change of plea form line by line with the Defendant at the Oahu Community Correctional Center ("OCCC").

23. Since this Court did not hear the Defendant's change of plea until April 16, 2013, the Court finds and concludes that if the Defendant had any serious concerns and/or questions regarding the plea agreement, he had both the time and opportunity to raise them with counsel.

. . . .

6

25. []Mr. Harada testified that he insisted upon the use of an interpreter even though the Defendant could understand some English. Mr. Harada further testified that he answered all of the Defendant's questions to the best of his ability, and that the Defendant at no time informed him of his desire to reject the plea agreement and proceed to trial.

26. Therefore, based on the examination and consideration of the entire record in this case and considering the testimony presented at the hearing on the Motion, the Court finds and concludes that the Defendant's Motion to Withdraw Plea lacks merit and is hereby denied.

On August 1, 2014, the circuit court issued its Judgment of Conviction and Sentence, finding Krstoth guilty of Murder in the Second Degree and sentencing him pursuant to the terms of the plea agreement to life imprisonment with the possibility of parole, with credit for time served. On September 29, 2014, Krstoth appealed the circuit court's Judgment of Conviction and Sentence to the ICA.

**B. Appeal to the ICA**

In his Opening Brief, Krstoth argued that the circuit court abused its discretion in denying his motion to withdraw plea because his testimony that he felt pressured by his attorney and interpreter to plead guilty and did not understand why he was pleading guilty constitutes plausible and legitimate grounds for the withdrawal of his guilty plea.

In its Answering Brief, the State contended that Krstoth failed to present fair and just reasons to support the motion, and that the record, including the change of plea colloquy and

7

the change of plea form, supports the court's finding that Defendant's plea was knowing, voluntary, and intelligent.

On July 30, 2015, the ICA issued its Summary Disposition Order, affirming the circuit court's August 1, 2014 Judgment of Conviction and Sentence. State v. Krstoth, CAAP-14-1143, at 1 (App. July 30, 2015) (SDO). The ICA first discussed the April 16, 2013 change of plea colloquy, and stated, "There is no indication that Krstoth was confused or reluctant to enter a changed plea to the charge." Krstoth, SDO at 2. The ICA noted, inter alia, Krstoth's statements that Harada reviewed the plea form with him and he did not have any questions, as well as the circuit court's explanation of the terms of the plea agreement and the rights Krstoth would be giving up by pleading guilty. Krstoth, SDO at 3. The ICA further stated,

> Krstoth did question the circuit court as to the meaning of a 'pre-sentence diagnosis and report,' thus indicating that he knew to ask the court for an explanation when he did not understand something. The court explained the process and the report at length to Krstoth. Krstoth appeared satisfied with the circuit court's explanation and had no other questions about the report when asked.

Id.

The ICA also noted Krstoth's acknowledgement and subsequent "reaffirm[ation] that no one was threatening him, forcing him or pressuring him to plead guilty and that he was pleading guilty of his own free will. Krstoth affirmed that there were no other promises in return for his guilty plea and that he was satisfied with his lawyer." Krstoth, SDO at 4.

8

With regard to the June 10, 2014 change of plea hearing, the ICA stated that "Krstoth's former attorney and interpreter both testified that they did not pressure Krstoth to plead guilty and that it appeared Krstoth understood why he was pleading guilty." Id. The ICA then held, "The record in this case does not support Krstoth's contention that the circuit court abused its discretion in denying his 'Motion to Withdraw Plea.'" Id.

On September 9, 2015, the ICA issued its Judgment on Appeal.

### III. Standard of Review

The denial of a Hawai'i Rules of Penal Procedure ("HRPP") Rule 32(d) motion to withdraw a plea prior to the imposition of sentence is reviewed for abuse of discretion. State v. Merino, 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citation omitted).

### IV.  Discussion

A trial judge is constitutionally required to ensure that a guilty plea is voluntarily and knowingly entered. State v. Solomon, 107 Hawai'i 117, 127, 111 P.3d 12, 22 (2005). "In determining the voluntariness of a defendant's proffered guilty

plea, the trial court 'should make an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences.'" Id. (quoting State v. Vaitogi, 59 Haw. 592, 602, 585 P.2d 1259, 1265 (1978)).

It is plain error for a trial judge to accept a defendant's guilty plea without an affirmative showing that it was intelligent and voluntary. Vaitogi, 59 Haw. at 601–02, 585 P.2d at 1264–65. Further, the validity of a guilty plea must be explicitly shown on the record. Jim, 59 Haw. at 602, 585 P.2d at 1265. Because a guilty plea involves the waiver of several important constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers, the record must also explicitly establish a valid waiver of these constitutional rights. Solomon, 107 Hawai'i at 127, 111 P.3d at 22.[3]

---

[3]    HRPP Rule 11 (2013) also mandates that the trial court, prior to accepting any plea, first address the defendant personally in open court and then determine that the plea is voluntary:

> (c) Advice to defendant.  The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court and determining that the defendant understands the following:
>
> > (1) the nature of the charge to which the plea is offered; and
> >
> > (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment,

(continued. . .)

After a change of plea, "[a] defendant does not have an absolute right to withdraw his guilty plea[.]"  Jim, 58 Haw. at 575, 574 P.2d at 522.  Where a motion to withdraw plea under HRPP Rule 32(d) (2012)[4] is presented prior to the imposition of sentence, however, this court has observed that a "liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice."  58 Haw. at 576, 574 P.2d at 523.  This

_____

(. . .continued)

> which may be imposed for the offense to which the plea is offered; and
>
> (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; and
>
> (4) that if the defendant pleads guilty or no contest there will not be a further trial of any kind, so that by pleading guilty or no contest the right to a trial is waived.
>
> . . . .
>
> (e) Insuring that the plea is voluntary. The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or no contest results from any plea agreement.

[4]   HRPP Rule 32(d) governs the withdrawal of guilty pleas, and provides, in relevant part, as follows:

> A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea.

court has stated "two fundamental bases of demonstrating 'fair and just reasons' for granting withdrawal of a plea:  (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea."  State v. Gomes, 79 Hawaiʻi 32, 37, 897 P.2d 959, 964 (1995).

Krstoth argues that the ICA gravely erred in holding that the record does not support his contention that the circuit court abused its discretion in denying his motion to withdraw plea.  He contends that his guilty plea was not made knowingly, intelligently, or voluntarily, and that his testimony provided fair and just reasons for the withdrawal of his guilty plea.

In this case, the record fails to establish a voluntary, knowing, and intelligent change of plea.  With respect to Krstoth's right to a trial, the circuit court engaged in the following colloquy:

> Q  Do you understand that you have a right to plead not guilty and ask for a trial?
>
> A  Yes.
>
> Q  Do you understand by pleading guilty you'll be giving up some rights?
>
> A  Yes.
>
> Q  I need you to listen up. You have a right to file motions to challenge the charge. You have a right to a public and speedy trial which means the prosecutor must present its case against you as quickly as possible. You have a right to a jury trial. And what a jury trial is is twelve people from the community are randomly selected. They sit in those orange chairs there. They listen to the evidence, and the jury decides if the evidence is sufficient to find you guilty.

You have the right to have the government bring the witnesses into court to testify in front of you. And through Mr. Harada you get to question the witnesses. You have a right to testify in your own behalf or have Mr. Harada bring witnesses for you to testify for you. And finally if there was a trial and if you were found guilty, you have a right to take an appeal to a higher court to see if there was any mistakes made by this court.

Now those are your rights as you stand there this morning. Do you understand that?

A Yes.

Q Do you understand by pleading guilty you give up those rights?

A Yes.

Q Do you understand by pleading guilty I'm going to find you guilty and sentence you without a trial?

A Yes.

Q Do you understand that after you are sentenced you cannot change your mind and say that I didn't like the sentence so therefore I want my trial?

A Yes.

This record does not establish a valid waiver of Krstoth's constitutional right to trial by jury, as required by Solomon. 107 Hawai'i at 128, 111 P.3d at 23. The validity of the waiver of a right to a jury trial is reviewed "under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct." Gomez-Lobato, 130 Hawai'i at 470, 312 P.3d at 902 (citation and emphasis omitted). In this case, Krstoth has a tenth grade education and has limited English proficiency. In the change of plea colloquy, the circuit court merely stated, "You have a right to a jury trial. And what a jury trial is is twelve people from the community are randomly selected. They sit in those orange

13

chairs there.  They listen to the evidence, and the jury decides if the evidence is sufficient to find you guilty."

Granted, we have held that a court is not required to give the full United States v. Duarte-Higareda, 113 F.3d 1000 (9th Cir. 1997) colloquy in every case, namely, that "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides [whether a defendant is ]guilt[y or not guilty] []  if the defendant waives a jury trial."  State v. Friedman, 93 Hawai'i 63, 69, 996 P.2d 268, 274 (2000) (quoting 113 F.3d at 1002).  In this case, however, the record of the change of plea colloquy only mentions the first factor.  The record does not touch on the second, namely, Krstoth's right to take part in jury selection.  The circuit court's statement that the twelve jurors are "randomly selected" does not mention that the defense, the court and the State are all involved in selecting a jury.  Likewise, the colloquy does not touch on the third factor, that a jury verdict must be unanimous.  With respect to the fourth factor, that the court alone decides whether a defendant is guilty or not guilty if the defendant waives a jury trial, the circuit court informed Krstoth that he has a right to jury trial, but did not even mention that he could opt for a bench trial.  Especially considering Krstoth's education and limited English proficiency,

this advisement regarding his right to jury trial was clearly deficient, and does not establish on the record an intelligent, knowing, and voluntary waiver of his right to jury trial, as required by Solomon.  Thus, the record of the change of plea colloquy does not establish Krstoth's waiver of his constitutional right to a jury trial.

Moreover, the change of plea colloquy is deficient in several additional ways, which also result in the record failing to establish a voluntary, knowing, and intelligent change of plea.  The circuit court told Krstoth that if he had a jury trial, the jury "listen[s] to the evidence, and the jury decides if the evidence is sufficient to find you guilty."  This suggests that Krstoth could be found guilty based on "sufficient" evidence, not evidence proving him guilty beyond a reasonable doubt.  In addition, the colloquy suggests that the only motions that could be filed on his behalf would be those to "challenge the charge."  It states that a right to a public and speedy trial "means the prosecutor must present its case [] as quickly as possible."  This suggests that the trial itself must be rushed, and not that the trial must commence within a certain time frame.  Finally, the circuit court actually told Krstoth that he could not change his mind and ask for a trial after he was sentenced.  This implies that he could change his mind and

withdraw his plea <u>before</u> he was sentenced, which is precisely
what he tried to do.

In addition, another major deficiency in the colloquy fails
to establish a voluntary, knowing, and intelligent change of
plea based on the record.  The circuit court's colloquy with
respect to Krstoth's sentence reflects the following:

> . . . Five, you'll be sentenced to a life term of
> imprisonment with the possibility of parole.  That both you
> and the State agree that you'll serve 15 years as a minimum
> sentence before you can be considered for parole.
>
> . . .
>
> Q  In addition to the agreement, Mr. Krstoth, I have
> told the attorneys that I believe that the minimum sentence
> of 15 years is a sufficient amount of time in this case.

This colloquy fails to mention that it is the Hawai'i
Paroling Authority, and not the circuit court, that
determines the actual minimum sentence that Krstoth would
have to serve before he could be considered for parole.
For those reasons, the record of the colloquy fails to
establish a valid voluntary, knowing, and intelligent
change of plea.[5]

We note that, overall, the manner in which the circuit
court questioned Krstoth also raises questions regarding whether
Krstoth voluntarily, intelligently, and knowingly entered his
plea with an understanding of the nature of the charge against

---

[5]    Having ruled based on these obvious deficiencies in the change of
plea colloquy, we do not address Krstoth's assertion that he was pressured
into changing his plea.

16

him and the consequences of his plea.  Specifically, the circuit court received one word responses from Krstoth and found that these responses indicated his understanding that he had a choice to plead guilty.  "A 'language barrier' between the defendant and the court is a 'salient fact' that puts the trial court on notice that a defendant's waiver may be 'less than knowing and intelligent.'"  Phua, 135 Hawai'i at 513, 353 P.3d at 1055 (quoting Gomez-Lobato, 130 Hawai'i at 471, 312 P.3d at 903 (holding that questions asked during a colloquy about a jury-waiver form were not sufficient to establish that a defendant knowingly, voluntarily, and intelligently waived his right to a jury trial where a language barrier existed and the court elicited only one word "yes" or "no" responses rather than determining whether the defendant clearly understood the constitutional right he was giving up)).  As we stated in Phua, "[i]n some circumstances, it may be necessary for a trial court to ask follow up questions to confirm the defendant's understanding of" rights he may be waiving.  135 Hawai'i at 514, 353 P.3d at 1056.

In this case, the record does not establish that Krstoth knowingly, intelligently and voluntarily waived his or her rights by changing his plea, as required by law.  Therefore, "fair and just reasons" existed for granting a withdrawal of his plea.  Moreover, the State did not argue that it would be

substantially prejudiced by the withdrawal of the plea. Accordingly, the circuit court's denial of Krstoth's motion to withdraw plea constituted an abuse of discretion, and the ICA erred in affirming the circuit court's Judgment of Conviction and Sentence.

## V.   Conclusion

We therefore vacate the ICA's September 9, 2015 Judgment on Appeal and the circuit court's August 1, 2014 Judgment of Conviction and Sentence, and remand to the circuit court for further proceedings consistent with this opinion.

William Li
for petitioner

Loren J. Thomas
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

18