**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000778
23-NOV-2021
07:55 AM
Dkt. 63 SO**

NOS. CAAP-18-0000778 & CAAP-18-0000779

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


NO. CAAP-18-0000778

STATE OF HAWAI'I, Plaintiff-Appellee, v.
HARDY AH PUCK, Defendant-Appellant
(CASE NO. 2CPC-18-0000077)


AND


NO. CAAP-18-0000779

STATE OF HAWAI'I, Plaintiff-Appellee, v.
HARDY AH PUCK, Defendant-Appellant
(CASE NO. 2CPC-17-0000884)

APPEALS FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

In these consolidated appeals, Defendant-Appellant
Hardy Ah Puck (**Ah Puck**) appeals from the Judgment; Conviction and
Sentence; Notice of Entry (**Judgment**), entered on March 1, 2018,
in the Circuit Court of the Second Circuit (**Circuit Court**) in
Case Nos. 2CPC-17-0000884 (**2017 Case**) and 2CPC-18-0000077 (**2018
Case**).[1]  After pleading no contest pursuant to a plea agreement
with Plaintiff-Appellee State of Hawai'i (**State**), Ah Puck was
convicted of:  (1) Promoting a Detrimental Drug in the Second
Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-

---

[1]  The Honorable Joseph E. Cardoza presided over both cases.

1248(1)(d) (2014),[2] in the 2017 Case; and (2) Promoting a Harmful Drug in the Fourth Degree, in violation of HRS § 712-1246.5 (2014),[3] in the 2018 Case.

Ah Puck raises a single point of error on appeal, contending that the Circuit Court plainly erred in finding that Ah Puck's no contest pleas were made knowingly, intelligently, and voluntarily.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Ah Puck's point of error as follows:

## I. Background

On November 14, 2017, the State charged Ah Puck with four counts in the 2017 Case: (1) Count 1, promoting a controlled substance in, on, or near schools, school vehicles, public parks, or public housing projects or complexes, in violation of HRS § 712-1249.6(1)(b) (2014); (2) Count 2, promoting a detrimental drug in the second degree, in violation of HRS § 712-1248(1)(d); (3) Count 3, promoting a detrimental drug in the third degree, in violation of HRS § 712-1249(1) (2014); and (4) Count 4, prohibited acts related to drug paraphernalia, in violation of HRS § 329-43.5(a) (Supp. 2017).

On February 2, 2018, the State charged Ah Puck with three counts in the 2018 Case: (1) Count 1, promoting a controlled substance in, on, or near schools, school vehicles, public parks, or public housing projects or complexes, in violation of HRS § 712-1249.6(1)(b); (2) Count 2, promoting a dangerous drug in the third degree, in violation of HRS § 712-1243(1) (2014); and (3) Count 3, prohibited acts related to drug paraphernalia, in violation of HRS § 329-43.5(a).

---

[2] HRS § 712-1248 provides, in relevant part: "(1) A person commits the offense of promoting a detrimental drug in the second degree if the person knowingly: . . . (d) Distributes any marijuana or any Schedule V substance in any amount." (Formatting altered.)

[3] HRS § 712-1246.5 provides, in relevant part: "(1) A person commits the offense of promoting a harmful drug in the fourth degree if the person knowingly possesses any harmful drug in any amount." (Formatting altered.)

On March 1, 2018, following one day of jury selection and two days of trial in the 2017 case, Ah Puck and the State reached a plea agreement. Pursuant to the agreement, Ah Puck entered no contest pleas to: (1) Count 2 in the 2017 Case; and (2) an amended charge of promoting a harmful drug in the fourth degree in Count 2 in the 2018 Case. Trial had not yet begun in the 2018 Case. The same day, the Circuit Court held a change-of-plea hearing, accepted Ah Puck's no contest pleas, and entered the Judgment in both cases.

## II. Discussion

Ah Puck contends that the Circuit Court failed to conduct an adequate colloquy to ensure that the waiver of his rights to trial and to appeal any matters that occurred prior to his change of plea were made knowingly, intelligently, and voluntarily. Ah Puck argues that during the Circuit Court's plea colloquy, Ah Puck indicated having received treatment for mental illness or emotional disturbance, but the Circuit Court failed to follow up regarding the extent of the treatment and instead accepted Ah Puck's brief responses to the court's questions.

A trial judge is constitutionally required to ensure that a guilty or no contest plea is made knowingly, intelligently, and voluntarily. See State v. Krstoth, 138 Hawaiʻi 268, 273, 378 P.3d 984, 989 (2016) (citing State v. Solomon, 107 Hawaiʻi 117, 127, 111 P.3d 12, 22 (2005)); State v. Hernandez, 143 Hawaiʻi 501, 515, 431 P.3d 1274, 1288 (2018).

> "In determining the voluntariness of a defendant's proffered guilty plea, the trial court 'should make an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences.'" [Solomon, 107 Hawaiʻi at 127, 111 P.3d at 22] (quoting State v. Vaitogi, 59 Haw. 592, 602, 585 P.2d 1259, 1265 (1978)).
>
> It is plain error for a trial judge to accept a defendant's guilty plea without an affirmative showing that it was intelligent and voluntary. Vaitogi, 59 Haw. at 601–02, 585 P.2d at 1264–65. Further, the validity of a guilty plea must be explicitly shown on the record. Vaitogi, 59 Haw. at 602, 585 P.2d at 1265. Because a guilty plea involves the waiver of several important constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers, the record must also explicitly establish a valid

> waiver of these constitutional rights. Solomon, 107 Hawai'i at 127, 111 P.3d at 22.

Krstoth, 138 Hawai'i at 273, 378 P.3d at 989; see Hernandez, 143 Hawai'i at 513, 515, 431 P.3d at 1286, 1288.

The validity of a waiver of a fundamental right is reviewed under the totality of the facts and circumstances of the particular case. State v. Friedman, 93 Hawai'i 63, 69, 996 P.2d 268, 274 (2000); see State v. Ernes, 147 Hawai'i 316, 323, 465 P.3d 763, 770 (2020) ("the issue is whether, under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct, the record reflects that the [trial] court . . . ensur[ed] that [the defendant's] jury trial waiver was voluntary, knowing, and intelligent" (quoting State v. Gomez-Lobato, 130 Hawai'i 465, 470, 479, 312 P.3d 897, 902, 911 (2013)) (internal quotation marks omitted)). In this context, the presence of a "salient fact" in the record can create the need for a more extensive colloquy to ensure the defendant's understanding. Friedman, 93 Hawai'i at 69-70, 996 P.2d at 274-75. Salient facts include a language barrier or mental illness. See Krstoth, 138 Hawai'i at 276, 378 P.3d at 992; State v. Han, 130 Hawai'i 83, 92, 306 P.3d 128, 137 (2013).

In State v. Martin, 146 Hawai'i 365, 463 P.3d 1022 (2020), the Hawai'i Supreme Court addressed whether the trial court's colloquy regarding the defendant's right to testify was deficient. Id. at 378, 463 P.3d at 1035. The defendant argued that the colloquy was not a "true colloquy" because the trial court recited a "litany of rights" without obtaining a response as to the defendant's understanding of the fundamental principles pertaining to his rights, and because evidence of the defendant's mental illness was a salient fact in the case. Id. at 379, 463 P.3d at 1036. There, the trial court had conducted the following colloquy prior to the close of the defendant's case:

> THE COURT: Okay. So you are [the defendant]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Are you thinking clearly?
>
> THE DEFENDANT: Yes.

THE COURT: Are you presently sick?

THE DEFENDANT: No.

THE COURT: Within the past 48 hours have you taken any pills, drugs, medication, or drank any alcohol?

THE DEFENDANT: Um, ibuprofens.

THE COURT: Okay.  You're suffering from pain?

THE DEFENDANT: Yes.

THE COURT: Okay.  Despite your pain and the medication, are you able to think clearly now?

THE DEFENDANT: Yes.

THE COURT: Okay.  As I discussed with you before the start of the trial, or at the start of the trial, you have the constitutional right to testify in your own defense. Although you should consult with your lawyer regarding the decision to testify, it is your decision and no one can prevent you from testifying should you choose to do so.  If you decide to testify, the prosecution will be allowed to cross-examine you.  You also have a constitutional right not to testify and to remain silent.  If you choose not to testify, the jury will be instructed that it cannot hold your silence against you in deciding your case.  Did you understand what I had to say?

THE DEFENDANT: Yes.

THE COURT: I have been advised by your lawyer that you do not intend to testify in regard to this case; is this true?

THE DEFENDANT: Yes.

THE COURT: And is it your decision not to testify?

THE DEFENDANT: Yes, it is.

Id.

The supreme court held that under the totality of circumstances, the trial court's colloquy provided "an objective basis for finding that [the defendant] knowingly, intelligently, and voluntarily gave up" his right to testify. Id. at 380, 463 P.3d at 1037.  With respect to the defendant's alleged mental illness, the supreme court noted that in addition to following the requirements of applicable case law, the trial court had "asked various questions with regard to the clarity of [the defendant's] state of mind at the time of the colloquy." Id.

Similarly, here, the Circuit Court's colloquy with Ah Puck included various questions to ensure that Ah Puck's mind was clear when he entered his no contest plea:

5

THE COURT: In connection with the plea agreement, it's my understanding that you want to withdraw your previously entered plea of not guilty to Count Two in 2CPC-17-884, Promoting a Detrimental Drug in the Second Degree, and plead no contest. In 2CPC-18-77, you want to enter a plea of no contest to an amended charge in Count Two of Promoting a Harmful Drug in the Fourth Degree. Do you want to enter pleas of no contest to these two charges today?

THE DEFENDANT: Yes.

THE COURT: Okay. All right. And I am going to ask you several questions about this decision. If you do not understand any of my questions, would you please let me know?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Mr. Ah Puck, you are currently 49 years of age; is that correct?

THE DEFENDANT: Correct.

THE COURT: And you have completed eight years of education; is that correct?

THE DEFENDANT: Correct.

THE COURT: Do you speak, read, write, and understand the English language?

THE DEFENDANT: Yes, I do.

THE COURT: Have you ever been under treatment for any mental illness or emotional disturbance?

THE DEFENDANT: Yes.

THE COURT: The treatment that you received for the mental illness or emotional disturbance, has that stabilized the condition for which you were or are being treated such that you can think clearly and participate fully in today's proceeding?

THE DEFENDANT: Yes.

THE COURT: All right. Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Have you taken any pills, drugs, medicines or alcoholic drinks within the last 48 hours?

THE DEFENDANT: No.

THE COURT: Are you feeling sick in any way today?

THE DEFENDANT: No.

(Emphasis added.) In addition, Ah Puck signed a written Form K,

*i.e.*, change of plea form,[4] representing, among other things, the following: "My mind is clear. I have not taken any medication, alcohol, or illegal drugs within the last 48 hours. I am not sick." See State v. Pedro, 149 Hawaiʻi 256, ___, 488 P.3d 1235, 1251 (2021) (though a signed Form K does not by itself render a plea constitutionally valid, it "does tend to show a plea was proper and its implications understood").

On the record, the Circuit Court confirmed Ah Puck's age, educational background, English language skills, and clear state of mind. The court's colloquy "systematically marched through each paragraph of Form K[,]" often elaborating to ensure that Ah Puck understood the consequences of his pleas. Id. The court explained the important constitutional rights that Ah Puck was waiving, including the right to trial by jury in each of his two cases, the rights to testify and not to testify, the right to question any witnesses who testified against him, and the right to appeal anything that had occurred prior to his change of plea. As to each constitutional right, the Circuit Court asked Ah Puck if he understood the right he was waiving. Ah Puck responded "Yes" to each of the court's questions, and confirmed that he was giving up his rights voluntarily. The court also reviewed the plea agreement's terms with Ah Puck, who indicated he understood the agreement and the consequences of his pleas. See id.

We also note that Ah Puck waived his trial rights after being present for one day of jury selection and two days of trial in the 2017 case. During the court's plea colloquy, the court asked Ah Puck "whether [he] want[ed] to have that trial end with a change of plea of no contest to Count Two or . . . to continue with the jury trial in that case?" Ah Puck responded, "Yes, I want to take the deal and end the trial today." When asked whether he wanted to take the plea agreement or have a jury trial in the 2018 case, Ah Puck responded, "Yeah, no jury trial." Following a thorough colloquy, the Circuit Court accepted Ah Puck's pleas.

---

[4] Ah Puck confirmed during the colloquy that he signed the change of plea form after reviewing it, including the attachment, with defense counsel. Defense counsel certified in Form K's "Certificate of Counsel" that he had explained and reviewed the entire change of plea form with Ah Puck.

Ah Puck argues that his "level of mental confusion" is displayed in various post-Judgment filings he made while self-represented, which his current counsel characterizes as "confused and unintelligible." However, the filings themselves do not indicate that Ah Puck's no contest pleas, which were entered while Ah Puck was represented by competent counsel, were less than knowingly, intelligently, and voluntarily made.

The record shows that the court engaged in a sufficient oral colloquy to ensure that Ah Puck's mind was clear when he entered his no contest pleas. Upon our review of the totality of the circumstances surrounding this case, taking into account Ah Puck's background, experience, and state of mind, as well as the written change of plea form (including defense counsel's certification), and the oral colloquy, we conclude that the Circuit Court did not err in determining that Ah Puck's no contest pleas were made knowingly, intelligently, and voluntarily.

For these reasons, the Judgment; Conviction and Sentence; Notice of Entry, entered on March 1, 2018, in the Circuit Court of the Second Circuit in Case Nos. 2CPC-17-0000884 and 2CPC-18-0000077, is affirmed.

DATED: Honolulu, Hawaiʻi, November 23, 2021.

On the briefs:

John F. Parker
(Law Office of John F. Parker, LLC)
for Defendant-Appellant.

Gerald K. Enriques
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge